## ALICE V. PENN ET AL. v. J. B. CASE.

### Decided May 4, 1904.

**1.—Husband and Wife—Homestead—Estoppel—Election.**

Evidence held insufficient to authorize submission of question of estoppel of wife from claiming rights in homestead conveyed by husband alone either by acceptance of a life interest conveyed by deed or as a party to judgment in partition proceedings.

**2.—Homestead—Jurisdiction of Probate Court—Partition—Judgment.**

The probate court in partitioning the estate of a decedent had power to determine that his mother, who had not joined in the conveyance to decedent by her husband of community property which was then their homestead, was, by reason of the invalidity of such deed as to her rights, the owner of a half interest therein, and to set aside such interest to her in the partition.

**3.—Minor—Service—Judgment—Guardian.**

A judgment against a minor not served with citation but represented by a guardian ad litem regularly appointed is not void, and can not be collaterally attacked for such lack of service.

**4.—Judgment—Partition—Homestead.**

Judgment in partition suit held not to conclude the homestead rights of a party thereto where such rights were not apparently involved or passed on.

**5.—Independent Executrix—Liability for Rents.**

On a recovery of land against one claiming it both in her own right and as independent executrix of her son's estate, judgment recovered for rents should run against her, not only as executrix, but personally

Error from the District Court of Dallas. Tried below before Hon. Richard Morgan.

*J. C. Muse* and *Cockrell & Gray,* for plaintiff in error.

*Moroney & Simpson* and *Joseph M. Dickson,* for defendant in error.

FISHER, CHIEF JUSTICE.—This is an action by the defendant in error against Alice V. Penn individually and as independent executrix of the estate of her deceased son, George Thomas Penn, to recover 220 acres of land and rents and damages. Upon a trial of the case the court peremptorily instructed a verdict in favor of the defendant in error against Alice V. Penn for the land in controversy, and against her as executrix of the estate of George Thomas Penn for the amount of rents stated in the judgment of the court. Verdict and judgment were in the defendant in error's favor for the land and for the amount of rents.

We find the following facts: John Penn is agreed to be the common source of title to the land in controversy, which was the community property of himself and his deceased wife Nancy Penn, and was acquired by them prior to 1860. Prior to 1860 John Penn and wife Nancy Penn acquired as their community property a tract of land in Dallas County, embracing the land in controversy, said entire tract containing 1004 acres. On July 28, 1860, John Penn and wife Nancy Penn, by deed, duly executed, acknowledged and recorded, conveyed to their son Robert G. Penn an undivided half interest in said entire tract of 1004 acres. Besides the son Robert G. Penn, there were, among

other children of the marriage of John and Nancy Penn, another son by the name of George W. Penn, who was born in 1849.

On May 10, 1862, John Penn brought suit against his wife Nancy Penn in the District Court of Dallas County for divorce. In May, 1862, Nancy Penn filed a cross-bill, praying for divorce against John Penn. On April 30, 1866, judgment in this divorce suit was rendered in favor of Nancy Penn against John Penn, granting a divorce on her cross-bill. No rights of property were adjudicated in this action. On April 3, 1866, pending the divorce suit, John Penn, without the consent of his wife Nancy Penn, executed a deed, duly acknowledged and recorded, reciting a consideration of $4000, conveying to his then minor son, George W. Penn, the remaining undivided one-half interest in the said entire 1004-acre tract, subject to the life estate therein of his wife Nancy Penn. Nancy Penn did not join in this deed. While this deed recites a consideration of $4000 paid by George W. Penn to his father John Penn, the evidence in the record shows that in fact no consideration was paid.

October 6, 1866, Robert G. Penn, son of John Penn and Nancy Penn, to whom the first conveyance mentioned was executed, conveying an undivided half interest in the 1004 acres, brought a partition suit in the District Court of Dallas County against George W. Penn and Nancy Penn, where in his petition he alleged that George W. Penn was the owner of an undivided half interest, and that Nancy Penn was entitled to the use and occupation for her lifetime of the interest of George W. Penn, and he asked that the land be partitioned between him and George W. Penn. The prayer is that the land be partitioned between the plaintiff and George W. Penn, and that he have judgment of the court vesting full and complete title in and to the part set apart to him, free from the use and control of either of the defendants. There was also a prayer for general relief and for costs. The record shows that Nancy Penn was served with citation and a certified copy of plaintiff's petition, and that a guardian ad litem was appointed for George W. Penn. No pleadings by either George W. Penn or Nancy Penn could be found at the time of the trial of this case.

On July 10, 1867, the District Court in this partition suit rendered judgment to the effect that the prayer of the plaintiff be granted, and that the land described in the petition be divided and set apart between plaintiff and defendant, according to quality and value thereof, one-half to Robert G. Penn, and the other half to defendant George W. Penn. Commissioners were appointed to divide the land. On July 17, 1867, they filed their report, upon which judgment was rendered that the plaintiff R. G. Penn have 590 acres, which were described in the report, and that the defendant George W. Penn and his mother Nancy Penn do have 414 acres, which it seems included the land in controversy; and the report recites that the homestead is situated upon the part allotted to defendant George W. Penn and his mother Nancy Penn. The judgment then goes on to state that it appearing that a partition was fairly

and equitably made, it is ordered that the same be confirmed, and that the parties Robert G. Penn and George W. Penn severally be confirmed each in his title to their respective tracts of land set apart to them by the commissioners in fee simple, forever; that each party pay one-half of the costs.

On January 24, 1874, George W. Penn married Alice V. Record. On October 30, 1878, George W. Penn died intestate. On September 1, 1875, there was born to this marriage George Thomas Penn, who was the only child of George W. Penn and his wife Alice, and she and the said George Thomas Penn were the only heirs at law of George W. Penn. George Thomas Penn never married. He died in October, 1899, leaving a last will and testament duly executed, by which he devised and bequeathed all of his property and estate to his mother Alice V. Penn, the plaintiff in error herein, and appointed her sole and independent executrix, without bond. This will was duly probated and Alice qualified as executrix of the estate.

On January 20, 1879, on the petition of Alice V. Penn, George W. Neely was appointed administrator of the estate of George W. Penn, deceased by the County Court of Dallas County, sitting as a probate court, and the administrator's bond was fixed at $10,000, which was duly executed and approved on January 25, 1879, and said Neely qualified as administrator of said estate. On February 1, 1879, appraisers were appointed, who, with the administrator, returned into court an inventory and appraisement of the estate, which was approved on March 26, 1879, but the original is lost and there is no existing record of its contents.

During the course of the administration Nancy Penn, the mother of George W. Penn, deceased, filed in the probate court a petition for partition, the original of which has been lost and the exact date of filing is not shown.

On May 28, 1879, the following order was made in said proceedings: "Estate of George W. Penn, deceased. G. W. Neely, administrator. Wednesday, May 28, 1879. In the matter of the partition and distribution of said estate: It appearing to the court that Thomas Penn, minor child of said decedent, and Alice Penn, his surviving wife, has no legally appointed guardian of his estate; it is ordered that H. Barksdale, Esq., an attorney of this court, be, and he is hereby appointed special guardian of the estate of said minor, pending the adjudication of said matter of partition."

On May 28, 1879, the following order was made: "Estate of George W. Penn, deceased. G. W. Neely, administrator. May 28, 1879: Now comes H. Barksdale and presents to the court for approval his bond as special guardian in the sum of $100, with John Bookhout as surety, and the same having been inspected, said bond is hereby approved and ordered of record, and the said H. Barksdale having taken the oath prescribed by law, it is ordered that letters be now issued to him. Said Barksdale as special guardian of the minor Thomas Penn presents his bond as such guardian of said minor."

On May 28, 1879, the following order or judgment was rendered: "Nancy Penn v. George Neely, administrator of George W. Penn, deceased: In the matter of the partition of the estate of George W. Penn deceased. This cause now coming on for trial the parties came by their attorneys, and the said Thomas Penn by his special guardian. And it appearing to the court from the statement of the parties that the said Nancy Penn, plaintiff, is the owner of and entitled to one-half of the land set out and described in plaintiffs' petition, and that the defendant Alice Penn as widow of George W. Penn, deceased, and Thomas Penn, as minor son of George W. Penn, deceased, are entitled to the other half thereof, and the said Alice Penn and Thomas Penn are entitled to the homestead out of said lands taken from the western portion thereof, including the late residence of said decedent, situated thereon; and that said part owners are entitled to have said land partitioned among them. It is therefore ordered, adjudged and decreed by the court that the above mentioned tracts or parcels of land, belonging to the estate of George W. Penn, deceased, be partitioned and divided among said part owners thereof; that one-half thereof in value, according to quantity and quality be set apart to the plaintiff Nancy Penn out of the eastern portion of said tract of land; and that the other half thereof, according to quantity and quality, be set apart to the defendant Alice V. Penn and Thomas Penn, said tracts of land being more particularly described as follows." (Here follows description of the 414 acres.)

Commissioners by this decree were appointed. On July 31, 1879, an order was made setting aside the report of the commissioners for partition as unfair and unjust to the said Nancy Penn, and appointing new commissioners for partition, with direction to partition the property according to the decree of May 28, 1879. On September 16, 1879, the following judgment was rendered:

"This day came the plaintiff Nancy Penn by her attorneys, and defendant G. W. Neely, administrator of the estate of George W. Penn, and Alice Penn by their attorneys, and the minor defendant Thomas Penn, by H. Barksdale, the special guardian of said minor. And this cause coming on to be heard on the report of the commissioners of partition heretofore appointed, which report is as follows: 'The undersigned commissioners of partition appointed to partition the land in controversy, in obedience to the writ of partition to them directed, they met upon the premises described in the decree accompanying said writ of partition, and after a careful inspection of the property, together with all improvements thereon, and an appraisement of the same, they set apart one-half in value thereof to George W. Neely, administrator of the estate of George W. Penn, deceased, Alice Penn, widow of George Penn, deceased, and Thomas Penn, being the western portion of said land.' Which land is described in the record, and contains 193 acres, and valued the same at $2400."

The same report set aside to Nancy Penn the rest of the land, which

is described in the report as the 221 acres of land in controversy in
this suit.

This report was approved by the court and a decree entered allotting
to the parties as stated in the report the tracts of land there described.
The 220 acres set apart to Nancy Penn in this last partition proceed-
ing was not administered upon or disposed of by the probate court other-
wise than as stated in the partition proceeding.

On September 23, 1879, Nancy Penn, by general warranty deed, con-
veyed the 221 or 222 acres in controversy, which was set apart to her
in the partition proceeding just stated, to her son Robert G. Penn; and
the evidence in the record shows that the defendant in error traces his
title back by instruments of writing and conveyances to Robert G.
Penn.

The original homestead of John and Nancy Penn was upon the 414-
acre tract set apart to George W. Penn in the partition suit brought by
Robert G. Penn against George W. and Nancy Penn; the family resi-
dence being upon the 193-acre tract set aside to Alice V. Penn and
George Thomas Penn in the probate partition.

Nancy Penn was living in and occupying the family residence and
homestead at the time of and before the institution of the divorce suit
heretofore mentioned, and continued to live in and occupy the home-
stead until 1878, when Robert G. Penn's wife died, and at his request
she went to live with him and take care of his minor children. She
continued to live with Robert G. Penn until her death, which occurred
on December 11, 1887. George W. Penn and his mother Nancy both
occupied the family residence and homestead pending the divorce suit,
and continued to live there, both before and after the marriage of George
W. Penn, and they continued to live there until his mother went to live
with Robert Penn, as above stated.

From the time of the probate partition, Alice Penn and her son
George Thomas Penn held actual, exclusive, peaceable and adverse pos-
session under claim of ownership of the 193-acre tract set apart to
them in the probate partition, until the death of said George Thomas
Penn, and since his death Alice Penn has held and now holds such
possession, and she and her son George Thomas received and appro-
priated to their own use all the rents and revenues of the 193-acre
tract.

John Penn, the husband of Nancy Penn, died intestate in 1871.
There is some evidence in the record which the plaintiffs in error con-
tend shows that Nancy Penn, after the conveyance made by her hus-
band John Penn to her son George W. Penn without her consent, ac-
quiesced in the same and elected to accept the benefit of the life estate
granted to her by that deed; and that she, by her subsequent conduct,
was estopped from asserting title to the 222 acres that she received in
the probate partition, and which was subsequently conveyed to her son
Robert Penn.

We do not deem it necessary to set out the evidence bearing upon

these defenses. The evidence that raised these issues was not in our opinion sufficient to authorize the court to submit the defenses insisted upon to the jury.

There is evidence in the record which justified the instruction of the trial court to find against Alice V. Penn as executrix for the sum stated as rents. But, however, there is no assignment of error complaining of the verdict and judgment in this respect, or of the peremptory instruction of the trial court to find the amount stated in the judgment.

At the time that John Penn, the father, conveyed to his son George, without the consent of Nancy Penn, the remaining undivided half interest in the 1004 acres, she was occupying with her mnior son George the original homestead, which was situated on this land. It does not appear from the record that Robert Penn, by reason of the conveyance to him of an undivided interest in the land, ever asserted any right or interest to the homestead; and in the partition suit between him and his brother George and his mother Nancy, that portion of the survey upon which the homestead was situated was set apart to his mother and brother George. It is clear from the conveyance to Robert, which was joined in by his mother Nancy, and from the subsequent conveyance executed by John Penn to his son George, which Nancy Penn did not join in, and her conduct subsequent to that time, that Nancy Penn never intended to part with her homestead interest in the land in question. The deed from John Penn to George Penn without her consent, was void as to her homestead rights. Stalling v. Hullum, 89 Texas, 431; Speer's Law of Married Women, secs. 259, 117, 258.

The constitutional provision and statutory law bearing upon the subject of homestead rights, and the necessity of the joinder of the wife in a conveyance of the same, were practically the same at the time that the conveyance was made by John Penn as exists now. The laws bearing upon the subject are stated in the case cited; and that case, with many other decisions that could be mentioned, hold that a conveyance of the homestead without the joinder of the wife in the conveyance, and when no new home is acquired in lieu of the old, is void. There was no new homestead acquired after this conveyance was executed, and Nancy Penn, together with her son George, continued to occupy the homestead until a short time before the death of George.

At the time of the rendition of the decree in the partition proceedings in the probate court, in which Nancy Penn was awarded the 221 acres in controversy, the homestead was an undivided part of the 414 acres that was awarded to George Penn and Nancy Penn by the decree of partition in the District Court in the case of Robert Penn against George and Nancy.

When the probate partition occurred, the deed to George Penn being void as to the homestead interest, she had a joint interest in the 414 acres with the estate of the decedent, George Penn; and by virtue of the statute then existing as now, the probate court had the authority to

partition the property between such joint owners. Pelham v. Murray, 64 Texas, 481; Pearce v. Jackson, 84 Texas, 515. Of course, it is conceded that the probate court would have no jurisdiction in a partition proceeding to adjudicate the question of title, if that issue should arise; but that court, in determining whether it should exercise jurisdiction to decree partition, has the power to ascertain whether the one invoking the remedy of the court is a joint owner with the estate of the property sought to be partitioned. This doctrine is practically admitted in the two cases last cited. The decree of the probate court seems to be regular, and it is therein recited that after hearing the statement of the parties, the court then proceeded to partition the property. The statements here referred to, or the evidence introduced in that court, must have informed it of the fact that Nancy Penn had a homestead interest in the property at the time that her husband John Penn undertook to convey it without her consent; and if such was the case, then the probate court properly applied the rule of law that holds such conveyances void, and necessarily reached the result that, from this fact, Nancy was the joint owner with the estate of the property sought to be partitioned.

The record of the probate proceedings relating to the partition does not show that the minor, George Thomas Penn, was served with citation, but the judgment recites that he was represented by a guardian ad litem, and that the guardian qualified. It is held in Austin v. Wilson, 83 Texas, 237, that a judgment against a minor not served, but represented by a guardian ad litem, is not void. The attack upon the judgment in the partition suit on this ground is merely collateral. Therefore, the rule announced in the above case is applicable here.

It is contended by plaintiffs in error that the judgment rendered in the partition proceeding in the District Court of Dallas' County instituted by Robert Penn against George Penn, is conclusive of the interest of Nancy Penn in and to any part of the 414 acres in controversy that was awarded to George Penn in that decree. We do not think this contention can be sustained by the facts. There is a part of the decree which recites that the 414 acres were set apart to George and Nancy Penn. There is another portion of the decree which awards the land to George Penn. There is nothing to indicate that the rights of Nancy to her homestead interest were involved in that controversy, or adjudicated; the main purpose being to determine the interest of Robert Penn and George, and accomplish a partition between those two, so far as there might be involved any question of title between them.

Our findings of fact, together with the legal conclusions as stated, render it unnecessary to discuss the other questions raised in the briefs, except so far as to dispose of a cross-assignment of error presented in the brief of the defendant in error. It is there contended that the trial court erred in not rendering judgment against Alice V. Penn in her individual capacity for the amount of rents recovered against her as executrix. As said before, there is no complaint by the plaintiffs in error as to the judgment for the amount of rents. The facts in the

record bearing upon this subject, and with reference to the use and occupancy of the property by Alice V. Penn, justify a judgment against her in her individual capacity, as well as against her as executrix; and we are of the opinion that the cross-assignment of error is well taken.

Therefore the judgment of the trial court as to the question of title and awarding rents against Alice V. Penn, as executrix is affirmed; but is here reformed and rendered in favor of the defendant in error against Alice V. Penn, individually, for the same amount of rents recovered by the defendant in error against her as executrix.

*Affirmed in part and reformed and rendered in part.*

Writ of error refused October 24, 1904.